UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Carl Statchen


        v.                              Civil No. 08-cv-128-JD
                                        Opinion No. 2009 DNH 137

Jason M. Palmer, et al.


                          O R D E R


        Carl Statchen brought a civil rights action under 42 U.S.C.
§ 1983, alleging that Concord Police Officers Jason M. Palmer and
Dick A. Scott used unreasonable force in detaining him.  Statchen
also alleges a common law assault claim against Palmer and Scott,
and a claim of vicarious liability against the City of Concord.
Palmer, Scott, and Concord move for summary judgment.  Statchen
objects.

        In support of their motion, the defendants submitted
affidavits from officers Palmer and Scott, excerpts from
Statchen's deposition, copies of an acknowledgment of Statchen's
nolo contendere plea in state court to two counts of resisting
detention, and an affidavit from the prosecutor for the City of
Concord.  Statchen filed an objection, which included a statement
from a witness, excerpts from his deposition, photographs, an
internal memorandum from the Concord Police Department, and a
medical record dated June 24, 2007.  The defendants moved to

strike four of Statchen's exhibits for failure to comply with
Federal Rule of Civil Procedure 56(e)(1).  The motion was
granted.  Therefore, the statement, the internal memorandum, the
photographs, and the memorandum will not be considered for
purposes of Statchen's objection to summary judgment.

Standard of Review

Summary judgment is appropriate when "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  The party seeking summary judgment must
first demonstrate the absence of a genuine issue of material fact
in the record.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  A party opposing a properly supported motion for summary
judgment must present competent evidence of record that shows a
genuine issue for trial.  See Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 256 (1986).  All reasonable inferences and all
credibility issues are resolved in favor of the nonmoving party.
See id. at 255.

Under the local rules of this district, memoranda in support
of or in opposition to a motion for summary judgment must include
a concise statement of material facts supported by appropriate

citations to record exhibits, which are filed with the supporting or opposing memorandum.  LR 7.2(b).  "All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party.  LR 7.2(b)(2).

<u>Background</u>

On June 22, 2007, at approximately 9:30 a.m., Concord Police Officer Dick Scott responded to call at Concord Hospital regarding a verbally abusive and potentially intoxicated man.  At the hospital, Scott encountered Carl Statchen, who appeared to be intoxicated.  Scott noticed that Statchen had a black eye and when he questioned him about it, Statchen said that he had gotten into a fight the night before and indicated that his opponent looked worse than he did.  Scott administered a breathalyzer, which showed that Statchen was over the legal limit for operating a motor vehicle.  Scott confiscated the beer that Statchen had in his car, took his car keys, and told Statchen that he could pick up his keys at the police station.  Scott also told Statchen to leave the hospital, which he did without incident.

Around 12:30 p.m. the same day, Scott and Officer Jason Palmer responded to a citizen's call regarding a man drinking behind a market in Concord.  The officers found Statchen with a

bag of beer cans behind the market.  Several of the beer cans
were empty, and Statchen appeared intoxicated.  Scott told
Statchen that they were going to take him into protective custody
and directed him to put his hands behind his back.  Statchen
shouted "No", threw the beef jerky he was holding to the ground,
bent his knees, and crouched like a linebacker in a two-point
stance.  Statchen remembers bracing himself for impact from the
officers, but to the officers it appeared that Statchen was
taking a fighting position.

When the officers attempted to handcuff Statchen, a struggle
ensued.  The officers state in their affidavits that Statchen
refused to put his hands behind his back when directed to do so.
They grabbed his arms and tried to force them back but were
unsuccessful.  They yelled at Statchen to stop resisting.
Statchen fell forward onto the ground, landing on his stomach.
Statchen testified at his deposition that the officers tackled
him and took him to the ground.

Scott put his right knee on Statchen's back to hold him
down.  Scott saw that Statchen had grabbed Palmer's left leg with
his right arm.  Scott was unable to pull Statchen's left arm back
to be handcuffed and kicked Statchen's left side with his knee to
force him to comply, which is a method he learned through
training and experience is effective in getting a resisting

4

person to comply with a lower risk of injury.  Scott and Palmer
continued to yell at Statchen to stop resisting.

Palmer states that after the fall, Statchen grabbed Palmer's
left leg, and Palmer hit Statchen repeatedly with a closed fist
in the back of Statchen's arm to make him let go.  Palmer states
that his training and experience has taught him that method to
force someone to release his grip.  Statchen then turned his head
toward Palmer's right knee with his mouth open, and Palmer
thought he was going to bite his knee.  Palmer responded by
hitting Statchen on the left side of his head to keep him from
biting.  Scott punched Statchen in the back to get him to let go
of Palmer's leg, and when that was unsuccessful, Palmer hit
Statchen's arm with his baton three times.  Scott continued to
strike Statchen with his knee.  Statchen let go of Palmer's leg
and allowed the officers to cuff his hands behind his back.

Statchen remembers trying to protect himself with his arms,
as he was being hit with knee strikes, beaten with the baton on
his arm, and punched in the face, head, and back.  Statchen does
not dispute that he was holding Palmer's leg and tried to bite
his right knee.  Statchen stated in his deposition that he
remembered responding with "unpleasantries" to the officers after
he was subdued and while riding in the police car.  The officers
report that Statchen called them names and challenged them to

fight him one-on-one.  In the course of the struggle, Statchen
received two broken ribs.

Statchen was arrested, charged with one count of resisting
detention and one count of simple assault, and taken to the
Concord Police Station for processing.  During the ride to the
police station, Statchen was agitated and stated that things
would have gone differently if it had been a one-on-one fight.
After he was booked, Scott attempted to transport Statchen to the
county jail.  Statchen asked to make a phone call to secure bail
money.  Scott told him that he had to be transported to the
county jail first, and Statchen again asked to make a phone call.
The parties dispute the subsequent events.

Statchen claims that when he was refused a phone call, he
refused to place his arms outside his cell to be cuffed.  Scott
asked other officers to help, and they entered Statchen's cell
together.  Scott stated in his affidavit that Statchen refused to
be handcuffed and held onto the bench where he was sitting and
that he and the other officers took hold of Statchen, forced his
arms behind him, and put the handcuffs on him.  Statchen stated
during his deposition that at least four officers rushed at him,
beat and punched him, slammed him into the wall, and yelled stop
resisting.  The officers got Statchen into handcuffs, and he was

6

transported to the county jail.  Based on the events in the cell,
Statchen was charged with another count of resisting detention.

In January of 2008, Statchen entered a plea of nolo
contendere to two counts of resisting detention as part of a plea
agreement.  The charge of simple assault was placed on file
pending good behavior for six months.

## Discussion

Statchen's complaint asserts that Palmer and Scott used
excessive force (Count I) against him, violating his rights under
the Fourth and Fourteenth Amendments,[1] and committed an assault
against him (Count II).  He further claims that the City of
Concord is liable for the assault under a theory of respondeat
superior (Count III).  In support of their motion for summary
judgment, the defendants contend that Statchen's claims are
barred by the Rooker–Feldman[2] doctrine, judicial estoppel, and
Heck v. Humphrey[3] because he was convicted in state court on the

---

[1]Statchen's complaint sets forth a claim under the Fourth
Amendment, which is made applicable to the states through the
Fourteenth Amendment.  See Martinez–Rivera v. Ramos, 498 F.3d 3,
7 n.4 (1st Cir. 2007).

[2]The Rooker–Feldman doctrine is taken from two Supreme Court
cases, Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923), and
District of Columbia Court of Appeals v. Feldman, 460 U.S. 462
(1983).

[3]Heck v. Humphrey, 512 U.S. 477 (1994).

charge of resisting detention as a result of the events of June 22, 2007.  On Count I, the excessive force Fourth Amendment claim, Palmer and Scott argue that no violation of the Fourth Amendment occurred and, alternatively, that they are entitled to qualified immunity.  On the assault claim,  Palmer and Scott argue that their conduct was justified under RSA 627:5, the City of Concord contends that the vicarious liability claim, Count III, against it fails because the officers' conduct was justified, and the officers contend that they are immune from suit under the doctrine of official immunity.

A.   <u>Effect of Convictions</u>

Statchen was convicted on two counts of resisting arrest in violation of New Hampshire Revised Statutes Annotated ("RSA") 642:2.[4]  The defendants argue that Statchen's state-court convictions for resisting detention bar his claims under the <u>Rooker-Feldman</u> doctrine, principles of judicial estoppel, and <u>Heck v Humphrey</u>.

---

[4] Under New Hampshire law, a person is guilty of resisting arrest if he "knowingly or purposely physically interferes with a person recognized to be a law enforcement official . . . seeking to effect an arrest or detention . . . regardless of whether there is a legal basis for the arrest." RSA 642:2.

1.   <u>Rooker-Feldman</u>

The defendants contend that based on his convictions, it is established that Statchen knowingly resisted their efforts to detain him.  They further contend that Statchen cannot base his excessive force or assault claims on an assertion that he did not resist.

The <u>Rooker-Feldman</u> doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments[,] rendered before the district court proceedings commenced[,] and inviting district court review and rejection of those judgments."  <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005).  Statchen's claims in this case arise from the officers' actions taken while detaining him and in handcuffing him at the police station.  Statchen does not claim an injury or constitutional violation arising from his convictions.  The <u>Rooker-Feldman</u> doctrine therefore does not preclude federal review of his claim because the injury he alleges is not a result of his conviction in state court.

2.   <u>Judicial Estoppel</u>

The defendants argue that Statchen is judicially estopped from arguing that he did not resist the officers' efforts to

9

place him into protective custody.  Judicial estoppel "prevents a
party from prevailing in one phase of a case on an argument and
then relying on a contradictory argument to prevail in another
phase."  Zedner v. United States, 547 U.S. 489, 504 (2006)
(internal quotation marks omitted).  The doctrine of judicial
estoppel is not clearly defined; however, courts generally
consider the following factors in determining its applicability:
(1) whether the arguments are clearly inconsistent, (2) whether
the court adopted the first argument, which would lead to
inconsistent results, and (3) whether the party's inconsistent
arguments would cause an unfair advantage or detriment to the
opposing party.  New Hampshire v. Maine, 532 U.S. 742, 750–51
(2001).  In the First Circuit, the first two factors are
necessary to find judicial estoppel, and the party offering
inconsistent positions need not have benefitted from the court's
acceptance of its first argument.  Thore v. Howe, 466 F.3d 173,
182 (1st Cir. 2006).

     The defendants contend that the facts alleged in Statchen's
complaint are "clearly inconsistent with the facts he agreed to
in the guilty pleas."  Def. Mem. at 23.  Statchen, however, did
not plead guilty, but instead entered a plea of nolo contendere.
Under New Hampshire law, a plea of nolo contendere is not an
admission of guilt.  See Stewart v. Bader, 154 N.H. 75, 81

10

(2006)("'[A] plea of nolo contendere in an earlier criminal
prosecution will raise no estoppel, since that plea neither
controverts nor confesses the facts upon which the conviction
must rest.'" (ellipsis omitted) (quoting Hopps v. Utica Mut. Ins.
Co., 127 N.H. 508, 511 (1985)).  Because Statchen did not admit
that he resisted detention, his present claim that he did not
resist is not inconsistent with his plea in state court such that
judicial estoppel bars his claims.

    3.   Heck v. Humphrey

    A plaintiff cannot bring a § 1983 action for damages that
challenges an underlying criminal proceeding unless he first
obtains an outcome favorable to him in the criminal proceeding.
See Olsen v. Correiro, 189 F.3d 52, 68-69 (1st Cir. 1999).  As
described by the Supreme Court:

        in order to recover damages for allegedly
        unconstitutional conviction or imprisonment, or for
        other harm caused by actions whose unlawfulness would
        render a conviction or sentence invalid, a § 1983
        plaintiff must prove that the conviction or sentence
        has been reversed on direct appeal, expunged by
        executive order, declared invalid by a state tribunal
        authorized to make such determination, or called into
        question by a federal court's issuance of a writ of
        habeas corpus.

Heck, 512 U.S. at 486-87.  Therefore, "the district court must
consider whether a judgment in favor of the plaintiff would

11

necessarily imply the invalidity of his conviction or sentence"
and allow the action to proceed only if "even if successful, [it]
will not demonstrate the invalidity of any outstanding criminal
judgment against the plaintiff."  Id. at 487.  By way of example,
the Court noted that to succeed on a § 1983 action for a Fourth
Amendment violation against the arresting officer, a plaintiff
who was "convicted of and sentenced for the crime of resisting
arrest, defined as intentionally preventing a peace officer from
effecting a lawful arrest," would have to establish that his
arrest was unlawful, thereby negating a required element of the
resisting arrest offense of which he was convicted.  Id. at n.6.

    The First Circuit has recognized that "[a] § 1983 excessive
force claim brought against a police officer that arises out of
the officer's use of force during an arrest does not necessarily
call into question the validity of an underlying state conviction
and so is not barred by Heck."  Thore, 466 F.3d at 180.  "Even
the fact that [the] defendant was convicted of assault on a
police officer does not, under Heck, as a matter of law
necessarily bar a § 1983 claim of excessive force."  Id.

    The tort of assault is physical contact, or the imminent
apprehension of contact, with a person that is neither authorized
nor privileged.  See Bucci v. Essex Ins. Co., 393 F.3d 285, 297
(1st Cir. 2005); United Nat'l Ins. Co. v. Penuche's, Inc., 128

12

F.3d 28, 32 (1st Cir. 1997) (addressing assault under New
Hampshire law and citing Restatement (Second) of Torts § 21
(1977)); Yale v. Town of Allenstown, 969 F. Supp. 798, 801
(D.N.H. 1997) (same).  Under New Hampshire law, law enforcement
officers are authorized to use nondeadly force to the extent the
officer reasonably believes it is necessary to make an arrest or
to defend himself or someone else in the course of making the
arrest.  RSA 627:5, I.  "[T]he standard for determining whether
force is reasonable for assault and battery claims is essentially
the same as the standard for determining if force is reasonable
for Fourth Amendment excessive force claims."  Godette v.
Stanley, 490 F. Supp. 2d 72, 80 (D. Mass. 2007) (internal
quotation marks omitted).

     To the extent that Statchen contends that any force was
unreasonable because he was not resisting detention at the market
or in his cell, that theory would negate his convictions for
resisting detention.  As a result, a claim that the defendants
used excessive force because he was not resisting would violate
the Heck rule and is barred.  On the other hand, Statchen also
appears to contend that the force used was unreasonable under the
circumstances, even though he was resisting.  It is plausible,
under certain circumstances, that police officers may use more

force than is reasonably necessary to control an individual who is resisting detention.  <u>See</u> <u>Thore</u>, 466 F.3d at 180.

Summary judgment is appropriate under <u>Heck</u> on Statchen's Fourth Amendment and assault claims that are premised on the theory that he was not resisting detention.  Statchen's claims that the officers used excessive force in detaining him, at the market and in his cell at the police station, despite Statchen's resistence, are not barred under <u>Heck</u>.


B.  <u>Fourth Amendment Claim</u>

Palmer and Scott argue that their actions did not violate the Fourth Amendment because they were reasonable under the circumstances.  Statchen contends that they used unreasonable force.

"To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances." <u>Jennings v. Jones</u>, 499 F.3d 2, 11 (1st Cir. 2007).  The inquiry is objective and seeks to determine what a reasonable officer on the scene would have found reasonable under all of the circumstances.  <u>Id.</u>  Reasonableness is determined by considering criteria which include "'the severity of the crime at issue,' the extent (if any) to which 'the suspect poses an immediate threat

14

to the safety of the officers or others;' and whether the suspect 'is actively resisting arrest or attempting to evade arrest by flight.'" Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).

In a similar case, Keith Rosenberg brought § 1983 claims against police officers and the city, alleging that the officers used excessive force in the course of arresting him. Rosenberg v. Homoki, 2009 WL 982146, at *1 (E.D. Pa. April 9, 2009). The circumstances that led to the charges began when Officer Homoki saw Rosenberg sitting in a parked car, recognized him due to his prior arrests, and knew that he had a suspended license. Id. at *2. When Rosenberg got out and began to walk away from the car, Homoki ordered him to stand at the back of the car and to put his hands on the trunk, and Rosenberg complied with that order. Id. According to Rosenberg, without provocation, Homoki then struck Rosenberg on the back with his baton. Id. Based on prior experiences with the police and fearing retaliation for a prior lawsuit, Rosenberg ran away. Id. Homoki chased and eventually tackled Rosenberg, pinning him down. Id. While Rosenberg was on his hands and knees, Homoki repeatedly hit him with his baton. Id. Rosenberg collapsed and was handcuffed. Id. Rosenberg suffered broken ribs as a result of being hit with the baton. Id. at 3.

15

The defendants moved for summary judgment, arguing that
Homoki's use of force was reasonable under the circumstances.
The court distinguished the cases cited by the defendants and
denied the motion on the excessive force claim, with respect to
Homoki's use of his baton, on the ground that there was a dispute
as to whether Homoki hit Rosenberg before or only after he
resisted arrest.  Id. at *6.  If the hit occurred without
provocation and before resistence, the force used was objectively
unreasonable.  Id.  In addition, the court ruled, taking the
facts in Rosenberg's favor, Homoki used excessive force when he
hit Rosenberg with his baton while Rosenberg was on his hands and
knees and not resisting.  Id.  The court explained, citing cases,
that while substantial force may be reasonable to overcome
resistance, it was not reasonable to hit Rosenberg if he were not
resisting.  Id.

Conversely, when police are faced with resistance and the
circumstances suggest that the uncooperative detainee might be a
danger to himself or others, force necessary to effect detention
is reasonable.  See Flanigan v. Colchester, 171 F. Supp. 2d 361,
366 (D. Vt. 2001).  In Flanigan, a man called the police to
complain that his neighbor, Flanigan, was threatening him with a
firearm.  Id. at 362.  Police officers went to Flanigan's house,
where he admitted that he had confronted his neighbor with a BB

16

gun, and the officers observed that Flanigan appeared to be intoxicated.  Id.  When Flanigan refused a breath test, an officer told him he was being taken into protective custody.  Id. at 363.

The officer asked Flanigan to put his hands behind his back for handcuffs, and Flanigan initially complied.  Id.  Before the handcuffs were in place, however Flanigan said no and backed away, heading toward the door of his house.  Id.  The officer knocked Flanigan's feet out, causing Flanigan to fall striking his shoulder, hip, and face on the ground.  Id.  On orders from two officers, Flanigan put his hands behind his back and was handcuffed.  Id.  The court granted summary judgment in the officer's favor on Flanigan's § 1983 claim of excessive force, concluding that because Flanigan was intoxicated and had access to a weapon inside his nearby house and because his injuries were not sufficiently severe to suggest excessive force, the officer's use of force was reasonable.  Id. at 366.

### 1.  Initial Detention

The circumstances in this case fall between those in Rosenberg and Flanigan.  At the time Palmer and Scott encountered Statchen behind the market, he was not armed or suspected of a crime nor did he have easy access to a weapon.  Statchen's

17

intoxication, his conduct at the hospital, and his story of a fight the previous day, however, indicated that Statchen could be a threat to his own safety and possibly the safety of others. The officers knew that Statchen had been intoxicated earlier in the day and saw that he was continuing to drink beer.  They decided to take him into protective custody.[5]

It is established that Statchen knowingly resisted detention by pulling his arms away from Scott and Palmer and by failing to obey their commands to stop resisting.  He also continued to struggle after he was taken to the ground, grabbed Palmer's leg, and threatened to bite Palmer's knee.  Although there were two officers attempting to detain one man, they were unable to get Statchen's arms into the handcuffs by pulling them and so they resorted to kicking, hitting, and punching to force Statchen to comply.  They explain, however, that they used the force necessary, based upon their training and experience, to get Statchen to release Palmer's leg and to comply with handcuffing. As soon as Statchen let go of Palmer's leg and agreed to be handcuffed, the officers stopped using force.

The summary judgment facts show that the officers used substantial force to subdue Statchen.  Because Statchen continued

_____

[5]See RSA 172-B:3.  Statchen does not challenge the officers' decision to take him into protective custody.

18

to resist detention, even taking the facts in the light most favorable to him, it was reasonable for the officers to use sufficient physical force to cause Statchen to submit to detention.  Statchen's conduct, struggling with the officers, grabbing Palmer's leg, and trying to bite Palmer, and his belligerent attitude toward the officers following the incident support their view that he was fighting them, not merely protecting himself.

The summary judgment record shows that the officers did not use force before it was necessary or after Statchen stopped resisting.  The circumstances the officers faced required the use of substantial force during the struggle.  Even if the officers' conduct constituted excessive force, however, as is discussed below, they would be entitled to qualified immunity.

2.  Handcuffing Incident in Police Station[6]

Statchen was charged with resisting detention and simple assault and was held at the Concord police station during the process of booking and setting bail.  Scott promised Statchen that he would be allowed to make a telephone call.  When Scott told Statchen that he would be transported to the county jail,

---

[6]While Scott was involved in the handcuffing incident at the police station, no mention is made of Palmer.

19

Statchen said he would not go until he was allowed to make a telephone call.  Scott told him he could make his call from the county jail.

Scott told Statchen to stand up and to put his hands out for cuffing.  Statchen refused to comply and remained seated on the bench in the cell.  Scott knew that Statchen was intoxicated and that he had resisted detention previously, requiring considerable force before he was subdued.  Under these circumstances, some use of force would have been reasonable to get Statchen into handcuffs.  Even taking Statchen's version of events as true, he was resisting, and the officers only used force until they were able to handcuff him.[7]  Again, the record supports a conclusion that no Fourth Amendment violation occurred, but even if that were not the case, Scott would be entitled to qualified immunity on this claim.

C.  Qualified Immunity

Scott and Palmer contend that they are entitled to qualified immunity on Statchen's claim in Count I that they used excessive force in violation of the Fourth Amendment.  The issue of

---

[7]Statchen does not identify what actions Scott took, as distinguished from the other officers called to the cell to assist.

qualified immunity generally requires a multi-step analysis.
Garcia-Rubiera v. Calderon, 570 F.3d 443, 459 (1st Cir. 2009).
Although the qualified immunity analysis previously has been
described in three parts, id., the First Circuit has recently
restated the analysis, after the decision in Pearson v. Callahan,
129 S. Ct. 808 (2009), indicating that there are only two steps,
although the second step has two parts.  Maldonado v. Fontanes,
568 F.3d 263, 269 (1st Cir. 2009).

The first step requires the court to determine "whether the
facts alleged or shown by the plaintiff make out a violation of a
constitutional right."  Id.  If a constitutional violation is
alleged or shown, the court then decides "whether the right was
'clearly established' at the time of the defendant's alleged
violation."  Id.  Determining whether the right was "clearly
established" involves two parts: establishing that the right was
"sufficiently clear that a reasonable official would understand
that what he is doing violates that right," and, focusing on the
particular facts of the case, that "a reasonable defendant would
have understood that his conduct violated the plaintiff's
constitutional rights."  Id.  The relevant inquiry for
determining whether a right was clearly established at the second
step "'is whether it would be clear to a reasonable officer that

21

his conduct was unlawful in the situation he confronted.'"  Id.
(quoting Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

     It is no longer necessary to address the first step of the
qualified immunity analysis, see Maldonado, 568 F.3d at 269-70,
although in this case the merits of Statchen's Fourth Amendment
claim are discussed above.  For purposes of the second step,
Scott and Palmer were on notice of the right Statchen asserts
because the First Circuit's "case law supplies a crystal clear
articulation of the right, grounded by the Fourth Amendment, to
be free from the use of excessive force by an arresting officer."
Morelli, 552 F.3d at 23.  The next question is whether, if Scott
and Palmer used excessive force, their actions "constituted the
type and kind of erroneous judgment that a reasonable police
officer under the same or similar circumstances might have made."
Id. at 24.  Qualified immunity protects officers whose actions
fall within "the sometimes hazy border between excessive and
acceptable force."  Saucier v. Katz, 533 U.S. 194, 206 (2001)
(internal quotation marks omitted).

     In Morelli, the police set up a sting operation in a hotel
to find prostitutes.  Morelli, an exotic dancer, answered a call
from an undercover agent to perform in a hotel room that was
fitted for surveillance.  Id., 552 F.3d at 15.  When she arrived,
the surveillance team recognized her as a known prostitute.  Id.

Because the agent posing as her client was acting strangely,
Morelli demanded her money up front, and he put the bills on the
counter.  <u>Id.</u>  Morelli refused to undress, stating that she was
there to dance, but then removed her jeans until she became
suspicious that this was not a bona fide appointment.  <u>Id.</u> at 16.
She then dressed, took a $20 bill, and left.  <u>Id.</u>

Morelli encountered several officers in the corridor outside
the room who accused her of stealing the $20, which she gave to
them.  <u>Id.</u>  One of the officers then tried to block her path, and
when that was unsuccessful, he grabbed her wrist and yanked her
around, slamming her against the wall.  <u>Id.</u>  He told her she had
to go back to the hotel room but kept her pinned against the wall
for several minutes before guiding her to the hotel room where he
questioned her.  <u>Id.</u>  Eventually she was allowed to leave, and
she immediately reported the incident to the police.  <u>Id.</u>  She
also went to the hospital where she was found to have a first-
degree shoulder separation and contusions.  <u>Id.</u>

Morelli brought § 1983 claims, including a claim that the
officer who detained her in the corridor used excessive force.
Granting summary judgment in the officer's favor, the district
court held that although Morelli made out a Fourth Amendment
claim, the officer was entitled to qualified immunity because a
reasonable officer could have believed that the force used was

23

appropriate.  Id. at 22.  The First Circuit disagreed, concluding
that because Morelli was not armed, dangerous, violent, or
attempting to flee, and given the disparity in physical size
between Morelli and the officer, the officer's use of force was
unreasonable.  Id.

    In this case, the amount and type of force used in the
initial encounter between Statchen and the officers was necessary
to subdue Statchen.  Statchen is a large person, and although he
was not armed, the officers reasonably interpreted his initial
stance as aggressive.  The struggle demonstrated that he was
actively resisting their attempts to detain him.  Even if the
force used fell into the hazy border between excessive and
acceptable force, Scott and Palmer would be entitled to qualified
immunity.

    The cell incident is less clearly defined.  Assuming the
facts as Statchen described in his deposition, the officers,
including Scott, used considerable force to handcuff him.
Statchen appears to agree, however, that he did not submit to
handcuffing until subdued by the officers.  In addition, given
Scott's knowledge of Statchen's intoxication and his previous
resistence to handcuffing, his response with several other
officers and overwhelming force was reasonable, even if more
force was used than was actually necessary.  Therefore, Scott is

24

entitled to qualified immunity for his actions in the cell incident.

D.   Assault - Count II

     Palmer and Scott contend that they are entitled to summary judgment on Statchen's assault claim because their use of force was authorized by RSA 627:5,I.  Alternatively, they contend that their conduct is protected by the doctrine of official immunity. Statchen disputes both defenses.

     To prove a civil claim for assault, a plaintiff must show that the defendant intended to cause harmful or offensive contact with the plaintiff and put the plaintiff in apprehension that the assault would occur.  Yale, 969 F. Supp. at 801.  Under RSA 507:8-d, a person is immune from civil liability for an action that is justified by RSA 627.  RSA 627:5, I provides as follows:

> A law enforcement officer is justified in using non-
> deadly force upon another person when and to the extent
> that he reasonably believes it necessary to effect an
> arrest or detention or to prevent the escape from
> custody of an arrested or detained person, unless he
> knows that the arrest or detention is illegal, or to
> defend himself or a third person from what he
> reasonably believes to be the imminent use of non-
> deadly force encountered while attempting to effect
> such an arrest or detention or while seeking to prevent
> such an escape.

Whether an officer's belief that his use of force was reasonable is determined under an objective standard.  State v. Cunningham,

––– A.2d –––, 2009 WL 1975909, at *3.  "A belief that is
unreasonable, even though honest, will not support the defense."
Id.

The parties agree that the standard under RSA 627:5,I is the
same as the Fourth Amendment standard.  The statute also echoes
the standard for qualified immunity.  Palmer and Scott have
shown, based on undisputed facts, that their conduct did not
violate the Fourth Amendment and that they are entitled to
qualified immunity.  The actions taken by Palmer and Scott in
detaining Statchen were justified under RSA 627:5,I.  Therefore,
no assault occurred, and alternatively, Palmer and Scott would be
immune from liability for Statchen's assault claim under RSA
507:8-d.

Because Palmer and Scott are entitled to summary judgment on
Statchen's assault claim, based on RSA 627:5,I, the court need
not consider their alternative defense of official immunity.


E.  City of Concord

In Count III, Statchen alleges that Concord is vicariously
liable for the assault committed by Palmer and Scott.  Under the
doctrine of respondeat superior, "an employer may be held
vicariously responsible for the tortious acts of its employee if
the employee was acting within the scope of his or her employment

26

when his or her tortious act injured the plaintiff." <u>Porter v.</u>
<u>City of Manchester</u>, 155 N.H. 149, 152 (2007) (internal quotation
marks omitted).  If the employees' conduct was not tortious,
however, the town cannot be vicariously liable.  <u>See</u> <u>Dupont v.</u>
<u>Aavid Thermal Techs., Inc.</u>, 147 N.H. 706, 714-15 (2002).

Because the summary judgment record shows that Palmer and
Scott did not assault Statchen, Concord is not vicariously liable
for the assault that is alleged.  Concord is entitled to summary
judgment in its favor.


<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for
summary judgment (document no. 13) is granted on all three counts
of the plaintiff's complaint.

The clerk of court shall enter judgment accordingly and
close the case.


SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

September 15, 2009

cc:  Charles P. Bauer, Esquire
     Jeanne P. Herrick, Esquire
     Michael J. Sheehan, Esquire

27